UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:21-cr-00245-MSS-SPF

JOSE PALMA

**UNITED STATES' SENTENCING MEMORANDUM**

The Court should sentence the defendant, Mr. Jose Palma to 135 months, the low end of his applicable guideline range (Level 33). In support thereof, the United States provides the following:

**Factual Background**

According to Mr. Palma's plea agreement, the following facts are not in dispute:

On July 21, 2021, a military patrol aircraft (MPA) sighted a go-fast vessel (GFV) in the international waters of the Caribbean Sea, approximately 150 nautical miles south of Santo Domingo, Dominican Republic. Members of the U.S. Coast Guard and Royal Canadian Navy interdicted the GFV, and the embarked U.S. Coast Guard law enforcement detachment team conducted a right of visit (ROV) boarding to determine the nationality, if any, of the subject vessel.

The defendants, Jose Palma, Jorge Hernandez, Tairo Ortega, and Jhon Rodriguez, were identified as the four (4) crewmembers of the GFV. The vessel displayed no indicia of nationality. None of the crewmembers claimed to be the

vessel's master, and no one claimed nationality for the vessel. Therefore, the GFV is subject to United States jurisdiction under 46 U.S.C. § 70502(c)(1)(A). The Coast Guard recovered 774 kilograms (at-sea weight) of cocaine aboard the subject vessel; the final weight when measured in a laboratory was 650.3 kilograms of cocaine.

## Procedural Background

On July 28, 2021, the grand jury returned a two-count indictment against defendants Jose Palma, Jorge Hernandez, Tairo Ortega, and Jhon Rodriguez. Doc. 1. Count One charged the defendants with conspiring to distribute, and possess with the intent to distribute, five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.* Count Two charged the defendants with possessing with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.*

On October 21, 2021, Mr. Palma changed his plea, entering a plea of guilty to Count One of the indictment pursuant to a plea agreement. Doc. 49. This Court accepted his plea and adjudicated him guilty on December 1, 2021. Doc. 64.

## Presentence Investigation Report

The final version of the presentence report (PSR) for Mr. Palma was filed on February 22, 2022. Doc. 91.

The final presentence report calculated a base offense level of 38 based on the weight of the cocaine. *Id.* at ¶ 19. A three-level acceptance of responsibility adjustment under USSG §3E1.1(a) and (b) was applied, as was a two-level reduction for Mr. Palma qualifying for Safety Valve under 18 U.S.C. § 3553(f) and USSG

§5C1.2, resulting in a total offense level of 33. *Id.* at ¶¶ 20, 26-28. Mr. Palma's criminal history was established to be Category I. *Id.* at ¶ 34. Based on a total offense level of 33 and a criminal history category of I, the guideline imprisonment range is 135-168 months. *Id.* at ¶ 64. A term of supervised release of at least five years must be imposed. *Id.* at ¶ 66, citing 21 U.S.C. § 960(b)(1)(B)(ii).

The probation officer did not identify any factors that would warrant a departure from the applicable sentencing guideline range. *Id.* at ¶ 78. The probation officer identified the following factor under 18 U.S.C. § 3553(a)(1)-(7) that may warrant a variance outside of the advisory guidelines: "his continued poverty." *Id.* at ¶ 79.

The United States has no objections to the facts or calculations in the PSR. Through counsel, the defendant notably objected to the failure to award a minor role reduction. The United States opposes the defendant's minor role objection.

## Minor Role

The United States opposes a minor role reduction for Mr. Palma because he cannot meet his burden of showing he is substantially less culpable than the average participant in the relevant conduct.

### A. Legal Framework

Under the United States Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. USSG §3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was

somewhere in between. *Id.* The adjustment applies to defendants that are "***substantially less culpable than the average participant*** in the criminal activity." *Id.* §3B1.2 cmt. n.3(A) (emphasis added). The proponent of the downward adjustment bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon,* 175 F.3d 930, 934 (11th Cir. 1999). Determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* §3B1.2 cmt. n.3(C) It requires consideration of various factors, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is

sufficient, the district court may also compare the defendant's conduct, in the criminal scheme attributed to him, to that of other participants. *Id.* at 934, 944.

Regarding the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct ***attributed to her***." *De Varon*, 175 F.3d at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *De Varon*, 175 F.3d at 944. Instead, "the district court must determine that the defendant was less culpable than ***most other participants*** in her relevant conduct." *Id.* (emphasis in original).

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the

amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

The Eleventh Circuit has applied the *De Varon* analysis to maritime interdiction conspiracy cases like the instant case and has upheld the district court's decision to deny a mitigating role reduction for a crewmember. For instance, in *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), the defendant—like Mr. Palma—pleaded guilty to drug trafficking in international waters in violation of 46 U.S.C. § 70503(a). The *Palma-Meza* court sentenced that defendant based on the quantity of cocaine involved (480 kilograms), the vessel's small crew size, and the defendant's background and work experience, and noted that the quantity of drugs "was not insignificant" and that his role on the vessel "was not meaningfully distinct from the other two crewmembers." *Id.* at 807-08; 810.

In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016), the defendant faced the same two charges on which the grand jury indicted Mr. Palma. The *Herrera-Villarreal* court sentenced that defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's

6

"actual conduct was identical to the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other vessel's crewmembers. *Id.*

**B.  Mr. Palma cannot show he is substantially less culpable than the average participant in the criminal activity.**

1. <u>Mr. Palma fails to satisfy the first prong of the *De Varon* analysis because he cannot show he is substantially less culpable within the conduct for which he was held accountable.</u>

*De Varon*'s first prong requires the Court to evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. The object of the conspiracy to which Mr. Palma pleaded guilty was to transport 5 kilograms or more of cocaine across international waters in a go-fast vessel. The actual, undisputed amount of cocaine found during this interdiction was 650.3 kilograms. Several of the *De Varon* and USSG. §3B1.2 cmt. n. 3(C) factors weigh against finding that Mr. Palma played a minor role in this conspiracy.

Mr. Palma is being held accountable only for the amount that the Coast Guard was able to recover from the vessel—in his case 650.3 kilograms of cocaine, which is worth approximately $19.5 million U.S. dollars in wholesale value. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role) *See also UnitedStates v. Cruickshank,* 837 F. 3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs that a courier possesses is a significant consideration in minor role analysis, but explaining

that it may not be used as the *only* factor the court considers).

Because Mr. Palma's actual conduct was coextensive with his relevant conduct, he cannot have had a minor role compared to his relevant conduct. Although Mr. Palma's conspiracy may be part of a larger criminal enterprise, he is not being held accountable for the actions of any larger enterprise. He is solely being held accountable for his actions aboard the GFV, with respect to the cocaine transported on that vessel. *De Varon*, 175 F.3d at 941, 947 (court should evaluate defendant's role based on the conspiracy for which he is held accountable; rejecting notion that the defendant's role should be based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor").

Lastly, Mr. Palma's offense level is calculated using only the amount of drugs recovered from the vessel. Thus, his "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 2016 WL 6123493 at *2. Because Mr. Palma did not have a minor role compared to his relevant conduct, he cannot carry his burden on the first prong of the *De Varon* analysis. *See, e.g., Alvarado-Forbes*, 247 F. App'x at 205 (denying minimal participant or minor role where defendant claimed his sole purpose on a vessel with kilograms of cocaine was "to be a live body" and "make the vessel look like a fishing vessel"; defendant's stated purpose "would not make him a minor participant because concealing the illegal nature of the vessel's cargo would be vital to the success of the smuggling scheme").

2. Mr. Palma fails to satisfy the second prong of the *De Varon* analysis.

Even if Mr. Palma could satisfy the first prong of the De Varon analysis, he fails to satisfy *De Varon*'s second prong, which requires the Court to compare the defendant's role in the conspiracy to that of other participants in the criminal scheme attributable to him. *De Varon*, 175 F.3d at 934, 944. As previously noted, the conspiracy for which Mr. Palma is being held accountable is limited to 650.3 kilograms of cocaine recovered from the vessel. The law is clear that the Court "cannot use a [defendant's] status [as a minor participant in the overall drug smuggling conspiracy] to justify a minor-role reduction in his sentence for the smaller conspiracy in which he personally participated." *United States v. Bonilla-Ortiz*, 362 F. App'x 63, 65 (11th Cir. 2010); *United States v. Pico-Mocera*, 740 F. App'x 969, 972-73 (11th Cir. 2018) (upholding denial of minor role where defendant failed to prove he had a lesser role than either of the other crewmembers); *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017) (upholding denial of minor role even though defendant was a mariner with less responsibility than captain and load guard); *United States v. Ramirez-Garcia*, 195 F. App'x 888, 890 (11th Cir. 2006) (rejecting mitigating role reduction where defendant was one of six mariners on a drug smuggling vessel that carried kilograms of cocaine).

The crux of the analysis is whether Mr. Palma is "substantially less culpable than the average participant" in the conspiracy. USSG §3B1.2 cmt. n.3(A). Stated differently, the issue is whether he is "less culpable than **most other participants**" in

the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); USSG §3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which Mr. Palma is being held accountable was a mariner in the boat transporting the drugs. Because Mr. Palma was himself a mariner on the GFV, he is not "substantially less culpable than the average participant." *Bonilla-Ortiz*, 362 F. Appx at 65. Because Mr. Palma failed to show that he is substantially less culpable than the average participant in the relevant conduct, he should be denied a minor role adjustment.

### **Sentencing Factors**

Sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the USSG is not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, sentencing judges can exercise discretion in deviating from the USSG, if doing so would result in a reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant;
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a USSG sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

To arrive at an appropriate sentence, the district court must consider all the applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

The United States submits that a low-end guideline sentence is appropriate considering the nature and circumstances of the offense, the history and characteristics of the defendant, and other factors set forth under 18 U.S.C.

§ 3553(a). Any further departure or variance below the guidelines is unwarranted and would result in a sentence insufficient to meet the statutory purposes of sentencing. Mr. Palma chose to participate in a conspiracy to transport millions of dollars of cocaine aboard a four-person GFV. Despite any personal circumstances or financial hardship that may have driven Mr. Palma to take part in an international drug smuggling conspiracy, this case involves a serious drug trafficking offense and must be treated as such. *See U.S. v. Moreno*, 134 F. Appx. 339, 342 (11th Cir. 2005) (noting that U.S.S.G. 5K2.20(c)(3) foreclosed an aberrant behavior downward departure for serious drug trafficking offenses such as maritime drug smuggling).

Section 3553 makes clear that the Court is to impose a sentence that will help promote respect for the law, provide deterrence to the commission of any future offenses, and protect the public. *See* 18 U.S.C. § 3553. Had Mr. Palma and his co-conspirators successfully completed their mission, immense harm to others could have arisen from the distribution and use of such a significant quantity of cocaine. Thus, a Guidelines sentence will serve Section 3553's various interests.

## **CONCLUSION**

For the reasons set out in this memorandum, the Court should deny any motion for a mitigating role reduction and sentence Mr. Palma within the applicable guidelines.

          Respectfully submitted,

          ROGER B. HANDBERG
          United States Attorney

By:   */s/David J. Pardo*
       David J. Pardo
       Assistant United States Attorney
       Florida Bar No. 61284
       400 N. Tampa St., Ste. 3200
       Tampa, FL 33602-4798
       Telephone: (813) 274-6000
       Facsimile: (813) 274-6358
       E-mail: David.Pardo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Counsel of Record

>>*/s/David J. Pardo*
>>David J. Pardo
>>Assistant United States Attorney
>>Florida Bar No. 61284
>>400 N. Tampa St., Ste. 3200
>>Tampa, FL 33602-4798
>>Telephone: (813) 274-6000
>>Facsimile: (813) 274-6358
>>E-mail: David.Pardo@usdoj.gov